UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Brandi L. Baltrip,   Case No.: 15-41529
                     Chapter 7
   Debtor.           Hon. Mark A. Randon
_____/

Kelly Cosby, Special Representative of the
Estate of Douglas W. Baltrip,

   Plaintiff,

v.                   Adversary Proceeding
                     Case No.: 15-04594

Brandi L. Baltrip,

   Defendant.
_____/

**OPINION AND ORDER: (1) GRANTING IN PART DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE; AND (2) DENYING WITHOUT PREJUDICE THE CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

Dr. Douglas W. Baltrip was driving drunk and died from injuries he sustained in a single-car accident. When the accident occurred, Douglas' wife, Brandi Baltrip, was driving directly in front of him, leading Douglas' sister, Kelly Cosby, to suspect that something Brandi did on the road that night caused her brother's death.

In the four years since the accident, no criminal charges have been brought against Brandi, and the cause of Douglas' death was ruled an accident. Still, Kelly, as special

1

representative of her brother's estate, filed a wrongful death action against Brandi in the Monroe County Circuit Court; Brandi filed Chapter 7 bankruptcy a few months later. In this adversary proceeding, Kelly seeks to: (1) deny Brandi's discharge under various provisions of 11 U.S.C. § 727; (2) continue the wrongful death action that was automatically stayed; and (3) have the Court determine that any debt arising from Brandi's alleged willful and malicious injury to Douglas is nondischargeable under 11 U.S.C. § 523(a)(6).

Two motions are pending: (1) Brandi's motion to strike the complaint, to dismiss the adversary proceeding, and for summary judgment; and (2) Kelly's motion for partial summary judgment. The motions have been fully briefed; the Court heard argument on October 5, 2015.

Because discovery is ongoing, the motions for summary judgment are **DENIED WITHOUT PREJUDICE**.[1] However, Brandi's motion to dismiss and to strike the complaint is **GRANTED IN PART** consistent with this opinion.

## II. BACKGROUND

Douglas was a wealthy optometrist; Brandi, a single mother and part-time dance instructor. The two were married on December 12, 2009.

Fast forward to the late evening hours of November 16, 2011: Douglas was at the Little Brown Jug ("LBJ"), a restaurant and bar in Maybee, Michigan. Douglas'

---

[1] For example, the parties have stipulated to Rule 2004 examinations.

acquaintance, James Terrasi, was also present. Throughout the evening, Douglas was seen drinking alcoholic beverages. Brandi arrived later.

Before the LBJ closed, Brandi and James attempted to take Douglas' car keys to prevent him from driving. But Douglas refused and demanded to drive himself home. Eventually, Douglas, Brandi, and James left the bar together–each in a separate car. The three drove toward the couple's home in tandem: Brandi directly in front of Douglas with James right behind him. According to James, during that fateful drive:

> [Douglas] tr[ied] to pass Brandi Baltrip's car on her left side on eight to ten occasions. Each and every time, she pulled her vehicle in front of Doug's so that he could not pass. On the last occasion that she pulled in front of him, I witnessed Doug Baltrip's vehicle leave the roadway, crash into concrete, become airborne and flip.

When asked at a recent deposition if Brandi forced Douglas off the road, James answered "no."

The press release from the Monroe County Sheriff's Office indicates that Douglas' car left the roadway "[f]or unknown reasons." The Death Scene Investigation Report states in part, "[i]t is unknown why [Douglas] left the roadway, with the possible exception of alcohol usage." Douglas' blood alcohol level was .247. He was pronounced dead at 4:42 a.m. on November 17, 2011. The manner of death was accidental; there was no criminal prosecution.

As Kelly's complaint lays out–often in unnecessary and demeaning detail–less than a year after Douglas' death, Brandi's romantic involvement with John Hoschak

3

surfaced.[2] Brandi gifted some of Douglas' personal property to John, including a 2008 Polaris utility vehicle and three of his watches. In addition, as Douglas' widow, Brandi was appointed personal representative of his probate estate. She received approximately $14,000.00 in trustee fees; $12,000.00 from Douglas' Farm Bureau insurance policy; $10,000.00 from the sale of Douglas' motorcycle; $4,000.00 from the sale of his Toyota FS Cruiser; and at least one expensive pool cue case.

Kelly alleges that when Brandi and Douglas' marital home was sold, John received all of the proceeds. Based on John's social media posts, Kelly also believes Brandi has an interest in three properties that John acquired: (1) 11694 Robinshire Street in Temperance, Michigan ("Robinshire Home"); (2) a home on Anna Marie Island in Florida ("Anna Marie Home"); and (3) hunting property in Northern Michigan

Kelly was appointed special representative of Douglas' estate to pursue a wrongful death action against Brandi. The lawsuit was filed on October 8, 2014. Brandi filed Chapter 7 bankruptcy on February 5, 2015.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012, provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light

---

[2]To repeat the allegations here would be to delve into the swamp the Court must drain with its Order striking several of Kelly's scurrilous allegations.

4

most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn. Dep't of Children's Services*, 510 F.3d 631, 634 (6th Cir. 2007). Dismissal is appropriate if the plaintiff failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## IV. BRANDI'S MOTION TO STRIKE THE COMPLAINT

As an initial matter, Brandi argues that the entire complaint should be stricken under Federal Rule of Civil Procedure 12(f): "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." The Court, however, is not required to strike the entire complaint under Rule 12(f); it can strike certain portions.[3] *Thompson v. Hartford Life & Accident Ins. Co.*, 270 F.R.D. 277, 279 (W.D. Ky. 2010). The decision to strike some or all of a complaint is within the Court's discretion. *In re Myers*, 2015 WL 5254954, at *3 (Bankr. N.D. Ohio Sept. 8, 2015).

After reviewing the complaint, the Court finds the details of Brandi's relationship with John, his financial status, and his ownership interest in Buffalo Wild Wings are

---

[3]At the hearing on October 5, 2015, Brandi argued that certain portions of the complaint should be stricken.

5

immaterial and impertinent. As such, the following must be stricken from the complaint:

1. The statement in the Introduction about John's financial status; and

2. Paragraphs 28-31, 35, 41-44, 48, 50, and 59.

## V. DENIAL OF CHAPTER 7 DISCHARGE UNDER SECTION 727

### A. *11 U.S.C. § 727(a)(2)(A)*

Section 727(a)(2)(A) allows denial of discharge if a debtor, within one year of the bankruptcy filing, "transferred, removed, destroyed, mutilated, or concealed" property "with intent to hinder, delay, or defraud a creditor[.]" 11 U.S.C. § 727(a)(2)(A). "This section encompasses two elements: 1) a disposition of property, such as concealment, and 2) 'a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act disposing of the property.'" *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000) (quoting *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir. 1997)).

#### 1. Transfer of Douglas' Personal Property

Because the alleged acts occurred more than one year before Brandi's bankruptcy filing, Kelly relies on the "continuing concealment" doctrine to support her allegations that Brandi transferred Douglas' 2008 Polaris utility vehicle and three of his watches to John with the intent to defraud a creditor. "Under the continuing concealment doctrine, a transfer made and recorded more than one year prior to filing may serve as evidence of the requisite act of concealment where the debtor retains a secret benefit of ownership in

6

the transferred property within the year prior to filing." *In re Keeney*, 227 F.3d at 684.

The problem is Kelly's complaint does not properly plead the "continuing concealment" doctrine, which requires both that Brandi transferred legal title more than a year before the petition date, and retained a secret benefit of ownership in the vehicle and watches. *See Peerless Ins. Co. v. Benson (In re Benson)*, 180 B.R. 28, 31 (Bankr. D. Conn. 1995). Therefore, as to these allegations, the complaint fails to state a claim upon which relief can be granted.

### 2. John's Receipt of Proceeds from the Sale of Brandi and Douglas' Marital Home

According to the complaint, both Brandi and Douglas' names were on the title to their marital home. As such, Brandi was entitled to some or all of the proceeds from the sale of the home. Kelly alleges that John received the entire $87,000.00, so she cannot collect from Brandi if her wrongful death action is successful.

As to these allegations, the complaint states a claim upon which relief can be granted.

### 3. Concealment of Brandi's Interest in Real Property

Kelly next alleges that Brandi has defrauded her creditors by concealing her interest in the Robinshire Home, Anna Marie Home, and hunting property in Northern Michigan. Although she relies solely on John's social media postings to support her allegations, construing the complaint in the light most favorable to Kelly and accepting the allegations as true, a plausible claim upon which relief can be granted has been made.

7

### 4. Concealment of Brandi's Interest in the Engagement Ring

Kelly also alleges that Brandi has defrauded her creditors by concealing her interest in the engagement ring John gave to her.

In Michigan, engagement rings are conditional gifts. Because Brandi and John are *not* married, Brandi has no interest in *John's* engagement ring. *Meyer v. Mitnick*, 244 Mich. App. 697, 703 (2001) ("an engagement ring given in contemplation of marriage is an impliedly conditional gift that is a completed gift *only* upon marriage.") (Emphasis added).

As to this allegation, therefore, the complaint fails to state a claim upon which relief can be granted.

### 5. Concealment of Brandi's Interest in Other Personal Property

Kelly's final allegation under section 727(a)(2)(A) is that Brandi has defrauded her creditors by concealing her interest in the lump sums of cash and pool cue cases she received from Douglas' estate.

Brandi did not challenge the sufficiency of the complaint as it relates to these allegations; they survive the motion to dismiss.

### B. *11 U.S.C. § 727(a)(4)(A)*

Section 727(a)(4)(A) directs the Court to grant a discharge unless: "the debtor knowingly and fraudulently, or in connection with the case–made a false oath or account[.]" 11 U.S.C. § 727(a)(4)(A). To deny a debtor's discharge under this section, a

8

plaintiff must demonstrate–by a preponderance of the evidence–that:

> (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case.

*In re Keeney*, 227 F.3d at 685.

### 1. Certain Allegations Lack the Materiality Element

Kelly alleges Brandi made the following false statements:

(1) she has not used another name in the eight years prior to her bankruptcy when she, in fact, has used her maiden name of "McKart" as recently as 2009;[4]

(2) she is not engaged to John, and he is merely a friend; and

(3) John does not have an ownership interest in Buffalo Wild Wings.[5]

Even if true, these allegations lack the materiality element. *See id.* at 686 ("[t]he subject of a false oath is material if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property") (internal quotations omitted). Without this element, these allegations fail to state a claim upon which relief can be granted.

---

[4]Brandi disclosed her maiden name, but for unknown reasons, the clerk sent a notice that it "Deleted Alias Brandi L McKart for [Debtor] Brandi L Baltrip."

[5]Kelly also alleges that Brandi reported that she: (1) lives with her parents when she actually lives with John; and (2) is an underpaid single mother struggling to get by when she is actually living a life of luxury. These allegations are not material because Kelly does not allege Brandi's Chapter 7 bankruptcy filing was a substantial abuse of the bankruptcy code.

9

### 2. Douglas' 2008 Polaris Utility Vehicle and Three of His Watches

Next, Kelly alleges that Brandi did not include on her schedules her interest in Douglas' 2008 Polaris utility vehicle and three of his watches. Because Brandi did not have an interest in this property when she filed bankruptcy, this allegation is implausible and will not be accepted as true.

### 3. Brandi's Interest in Real and Personal Property

Kelly's final allegation under section 727(a)(4)(A) is that Brandi failed to include on her schedules her interest in the Robinshire Home, the Anna Marie Home, and the real property in Northern Michigan; lump sums of cash; expensive pool cue cases; and the engagement ring, wedding band, and yellow diamond ring from Douglas.[6]

The Court finds that, if true, these allegations state a claim upon which relief can be granted.

### C. *11 U.S.C. § 727(a)(5)*

11 U.S.C. § 727(a)(5) provides that a debtor shall receive a discharge unless she "has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]" Section 727(a)(5) includes any unexplained disappearance or shortage of assets. *Solomon v. Barman (In re Barman)*, 244 B.R. 896, 900 (Bankr. E.D. Mich. 2000).

---

[6]She also alleges that Brandi did not include her interest in the engagement ring from John. As stated previously, because Brandi is not married to John, she has no interest in the engagement ring.

Kelly alleges that Brandi has not satisfactory explained what happened to the following assets:

1. $4,000.00 received from Douglas' estate;

2. $12,000.00 received from Farm Bureau in 2014;

3. her sauna;

4. an expensive pool cue case valued at $1,900.00; and

5. $10,000.00 from the sale of Douglas' motorcycle.

The Court finds that, here, Kelly's complaint also states a claim upon which relief can be granted.

## VI. BRANDI'S WILLFUL AND MALICIOUS INJURY TO DOUGLAS

Brandi correctly argues that the Court lacks subject-matter jurisdiction to determine Kelly's wrongful death claim. 28 U.S.C. § 157(b)(5) ("The district court shall order that . . . wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending."). However, "[t]he Bankruptcy Court has exclusive jurisdiction to determine the dischargeability of debts under Section 523(a)(2), (a)(4), and (a)(6)." *In re Ulrich*, 456 B.R. 345, 348 (Bankr. N.D. Ohio 2011).

11 U.S.C. § 523(a)(6) provides that debts for "willful and malicious injury by the debtor to another entity" are nondischargeable. The injury must be both willful *and* malicious; the absence of one makes the debt dischargeable. *Markowitz v. Campbell* (*In*

11

15-04594-mar    Doc 24    Filed 11/02/15    Entered 11/03/15 08:09:25    Page 11 of 13

*re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999).

The United States Supreme Court has defined "willful" as follows:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, *i.e.,* "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself."

*Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998) (emphasis in original). "[I]n order to find a 'willful' injury under § 523(a)(6), [the Court] must determine either that (i) the actor desired to cause the consequences of the act or (ii) the actor believed that the given consequences of his act were substantially certain to result from the act." *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 307 (6th Cir. B.A.P. 2004) (citing *In re Markowitz*, 190 F.3d at 464).

The Court finds, at best, Kelly's complaint sounds in negligence. There is no allegation that Brandi intended to cause Douglas' death. As such, in this regard, the complaint fails to state a claim upon which relief can be granted.

## VII. CONCLUSION

Because discovery is ongoing, the motions for summary judgment are **DENIED WITHOUT PREJUDICE**. Brandi's motion to dismiss and to strike the complaint is **GRANTED IN PART**.

12

By *November 13, 2015*, Kelly must file an amended complaint consistent with this opinion.[7] On *November 16, 2015*, the original complaint will be stricken in its entirety.

```
Signed on November 02, 2015
                                             .
                                                /s/ Mark A. Randon
                                        Mark A. Randon
                                        United States Bankruptcy Judge
```

---

[7]In amending the complaint, Kelly is admonished to responsibly state the facts as she believes them to be without the teaser headings one would expect to find in a supermarket romance novel or any other unnecessary allegations.

15-04594-mar    Doc 24    Filed 11/02/15    Entered 11/03/15 08:09:25    Page 13 of 13